**NEW YORK TRUST CO. et al. v. SECURITIES AND EXCHANGE COMMISSION et al.**

No. 6.

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1942.

Humes, Buck, Smith & Stowell, of New York City (Ben LeRoy Stowell, of New York City, of counsel), for petitioners.

Donald R. Richberg, of Chicago, Ill., Park Chamberlain, of New York City, and John Dern, of Chicago, Ill. (Davies, Richberg, Beebe, Busick & Richardson, of Washington, D. C., and Sidley, McPherson,

Austin & Burgess, of Chicago, Ill., of counsel), for United Light & Power Co.

Chester T. Lane, Gen. Counsel, of Washington, D. C., John F. Davis, Asst. Gen. Counsel, of Washington, D. C., Homer Kripke, Sp. Counsel, of Philadelphia, Pa., Roger Foster, Counsel to Public Utilities Division, of Washington, D. C. (Theodore L. Thau, of Washington, D. C., and Aaron Levy, of New York City, of counsel), for Securities and Exchange Commission.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This petition to review an order of the Securities and Exchange Commission made under the Public Utility Holding Company Act of 1935, 15 U.S.C.A. §§ 79, 79a et seq. was brought by the trustee under two debenture agreements of the United Light and Power Company, and by certain holders of the debentures of that company. The order denied the right claimed by the debenture holders to be paid, upon the dissolution of the corporation under a plan approved by the Commission, a premium in addition to the principal and accrued interest on the bonds.

The corporation, which will herein be called Power, is a registered holding company at the top of a system comprising fifty-two companies of which seven are themselves registered holding companies. Its position in this set-up was established previous to the effective date of the above mentioned statute now to be referred to as the Act, and after that took effect the Commission in due course and on March 20, 1941, entered an order under § 11(b) (2) requiring the liquidation and dissolution of Power. This order has become final. Power has undertaken to comply with it and in so doing has made various applications to the Commission for approval of proposed steps to that end with the result that it has ample funds to pay all of its obligations whether or not the premiums here involved are payable.

The order now on review was made upon the application of Power to the Commission for approval of a plan providing inter alia for the retirement by the payment of principal and accrued interest only of debenture bonds on dates, far in advance of maturity, as of which Power, had it exercised an option it had in the debenture agreements to call the bonds, would have had to pay a premium of nine per cent.

The sole issue now is whether the petitioners are entitled to the same premium which would have been payable upon a call by the corporation.

Much of the elaborate argument of the petitioners becomes irrelevant when once it is realized that the order of March 20, 1941 requiring the liquidation and dissolution of Power was not only clearly within the scope of the statute under which the Commission acted and justified by the facts but having become final has thereby become the fixed point from which to survey the right they now claim. It was the duty of the Commission under § 11(b) (2), (d) and (e) of the Act to supervise the carrying out of its order of dissolution and to that end it properly entertained applications for its approval of the steps proposed to be taken. How these bonds should be dealt with was one of the questions requiring decision and as such was clearly within the proper scope of a plan to be submitted to the Commission under above subsection (e). The petitioners argue that even so the Commission was powerless to find as the subsection required that the payment of the bonds was "necessary to effectuate the provisions of subsection (b)" if there were alternative ways to dispose of the bonds upon dissolution of the issuing corporation. They suggest that such an alternative would have been to require the holding company to be left at the top of the system to assume them. We need not, however, discuss the virtues or the opposite of that suggestion. Obviously Congress gave the Commission the power, subject to the review provided for its orders, to decide what was necessary in each instance to effectuate the provisions of subsection (b). It is quite as obvious that debenture holders are in no position to question the necessity of a provision in a plan which provides cash for them in exchange for their bonds to the full extent of the contract in the bond and this is especially true of the holders of callable bonds like these. Nor will we disturb a finding of the Commission unless it is clearly erroneous. Hartford Gas Company v. S. E. C., 2 Cir., 129 F.2d 794. Consequently we pass to the substantial question of whether the plan providing for the retirement of the bonds was unfair and inequitable to the debenture holders in failing to require the payment of any premium.

That depends upon the contract rights of the debenture holders under the

applicable principles of contract law. We agree with the petitioners that the debenture agreements, in so far as they provided for the payment of principal on dates certain and the payment of interest at a specified rate to the maturity dates, gave the bondholders the right to insist that the payment of principal should be made only at maturity and interest should be paid until then. Missouri, K. & T. R. Co. v. Union Trust Co., 156 N.Y. 592, 51 N.E. 309. This right of the bondholders, however, was modified by an option reserved by the obligor to call the bonds and extinguish the right of the bondholders to have their investment continued longer. For the privilege of exercising this option the corporation agreed to pay a premium at a stated rate which would decrease as time elapsed. That is to say, the corporation had the right to shorten the bondholders' period of investment by paying the premium price for so doing. It is abundantly clear that both of these contract rights, the one that of a bondholder and the other that of the corporation, flowed from debenture agreements which contemplated as indispensable the continued existence of the corporation. Such continued existence was needed to enable it to pay from time to time as promised and needed also to give it any inducement when the condition of its affairs might make such payment advantageous to exercise its privilege to pay a stated premium to relieve itself of the burden to pay interest as otherwise agreed.

This continued existence was made impossible by the valid final order of the commission dated March 20, 1941. So much being established, we have no occasion to discuss any more fully the Commission's creation or powers from a constitutional or other viewpoint. We have but to decide the effect on the debenture agreements of a lawful governmental order requiring the obligor to liquidate and give up its existence as a corporation before all payments of interest on the bonds have been made as agreed. Though it has been deprived of its ability to perform strictly, the corporation is in a position to pay the equivalent of the money payments in the future to be made. Therefore substantial compliance is possible and so it cannot be said that future payments of interest are excused as a matter of law because performance by the payment thereon, discounted or otherwise, has been made impossible by the Commission's dissolution order. Yet the future interest payments are excused because by the order of the Commission, i. e., by governmental power, which neither obligor nor obligee could control or with respect to which they made the contract, the venture has been frustrated. Restatement of Contracts, §§ 460, 461.

Where, through no fault of either party, something necessary for the continued performance of a contract goes out of existence because of some unforeseen circumstance and none of the parties have assumed that risk the contract is regarded as charged with the implied condition that if what is necessary to performance becomes unavailable the contract is no longer binding and further performance is excused. Texas Company v. Hogarth Shipping Co., 256 U.S. 619, 41 S.Ct. 612, 65 L.Ed. 1123; Chicago, Milwaukee & St. Paul R. Co. v. Hoyt, 149 U.S. 1, 13 S.Ct. 779, 37 L.Ed. 625. This is especially true where, as here, the essential existence of one of the parties to a contract has become illegal and impossible because contrary to a new. concept of public policy which was unforeseeable when the contract was made. Holyoke Water Power Co. v. American Writing Paper Co., 300 U.S. 324, 57 S.Ct. 485, 81 L.Ed. 678; Louisville & Nashville R. R. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671.

This involuntary destruction of the corporation deprived it of any freedom of choice except perhaps as to the cost of its funeral. It certainly was not in a position to elect to pay a premium to better its capital structure for continued business purposes. And it certainly was under no obligation to exercise its option to call the bonds if it had nothing to gain by so doing. That motive absent, it might well let the rights of those in interest be determined as though there had been no call option. The order under review was, accordingly, fair and reasonable to all parties in interest since it provided for the payment of the bonds in a way which discharged in full the contract obligations of the dissolved corporation.

Affirmed.